UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALMA CANADA-NEAL,

        Plaintiff,                                      Case No. 1:08-cv-232

v.                                                   HON. JANET T. NEFF

DELTA AIRLINES, INC. and COMAIR, INC.,

        Defendants.

_____/

## **OPINION**

        Plaintiff filed this negligence and breach of contract action seeking recovery for injuries sustained in a fall after she was allegedly denied wheelchair assistance at the Cincinnati-Northern Kentucky Airport, to transport her to a changed departure gate. Pending before the Court are Defendant Delta Airlines, Inc.'s Motion for Summary Judgment (Dkt 9) and Defendant Comair, Inc.'s Motion for Summary Judgment (Dkt 109). Also pending before the Court is Defendant Delta Airlines, Inc.'s Motion for Leave to Join in Comair's Inc.'s Motion for Summary Judgment (Dkt 102), which the Court grants as a preliminary matter.

        The Court has considered the extensive briefing filed by the parties, the statements of material fact annexed to the briefs, and the documentary evidence. For the reasons that follow, the Court denies defendants' motions for summary judgment. Pursuant to W.D. Mich. LCivR 7.2(d), the motions are decided without oral argument.

I. Factual and Procedural Background

Plaintiff is a 90-year old widow who resides in Berrien Springs, Michigan, and purchased a round trip airline ticket from defendant Delta Airlines to fly from South Bend, Indiana to Fort Lauderdale, Florida. Because plaintiff has health problems, she requires wheelchair assistance when traveling by airplane; plaintiff's flight ticket/boarding pass noted that a wheelchair was requested.

On her return flight from Fort Lauderdale on March 29, 2007, plaintiff had a scheduled layover of approximately three hours at the Cincinnati-Northern Kentucky Airport. Upon her arrival at the airport at approximately 9:59 a.m. from her Delta flight, plaintiff was provided wheelchair assistance in deplaning and was transported to Gate A-4, where she was to depart on her scheduled 1:25 p.m. Chautauqua Airlines flight to South Bend. The departure gate for the South Bend flight was subsequently changed to Gate A-24, some distance away.

The parties dispute the course of events after the time plaintiff arrived at Gate A-4 and learned that her departure gate had been changed, which led to plaintiff attempting to walk to Gate A-24. It is defendants' position that plaintiff was offered, but declined, wheelchair assistance to move to the new gate. It is plaintiff's contention that airlines personnel denied wheelchair assistance to plaintiff and told her she had plenty of time to walk to Gate A-24. In any event, it is undisputed that plaintiff began walking down the concourse to the new departure gate. After plaintiff stepped off a moving sidewalk and started walking toward the next moving sidewalk, she fell. Plaintiff suffered a fractured hip in the fall. She was transported to a local hospital where surgery was performed on her broken hip.

Plaintiff filed this action in Berrien Circuit Court in Michigan, against Delta Airlines and Chautauqua Airlines,[1] seeking recovery for her injuries and losses sustained as a result of her fall. The action was removed to this Court on March 7, 2008. One week later, on March 14, 2008, Delta Airlines filed a motion for summary judgment. The motion was held in abeyance pending discovery and plaintiff's determination of the proper defendants. Following discovery and a pre-motion conference to address a motion for summary judgment by Comair Airlines, the Court permitted supplemental briefing on Delta Airlines' Motion for Summary Judgment, which was to be submitted for decision together with Comair Airlines' Motion. Delta Airlines thereafter sought leave to join in Comair Airlines' Motion for Summary Judgment.

## II.  Legal Standard

A moving party is entitled to a grant of its motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). The court must consider the evidence and all reasonable inferences in favor of the nonmoving party. *Slusher v. Carson,* 540 F.3d 449, 453 (6th Cir. 2008); *Hamilton v. Starcom Mediavest Group, Inc.,* 522 F.3d 623, 627 (6th Cir. 2008).

The party moving for summary judgment has the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Slusher,* 540 F.3d at 453. "Once the moving party supports its motion for summary judgment, the opposing party must

---

[1] Chautauqua Airlines and Republic Airlines were named as defendants in this action, but were later dismissed. Defendant Comair Airlines was subsequently added as a defendant.

go beyond the contents of its pleadings to set forth specific facts that indicate the existence of an issue to be litigated." *Slusher,* 540 F.3d at 453 (citing FED. R. CIV. P. 56(e)). The ultimate inquiry is "whether the state of the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

### III.  Analysis

Plaintiff's second amended complaint alleges claims of negligence and breach of contract based on the denial of wheelchair assistance to plaintiff during her layover at Cincinnati-Northern Kentucky Airport. At the core of the parties' dispute is whether airlines personnel acting on behalf of defendants denied plaintiff wheelchair assistance or whether plaintiff declined wheelchair assistance and chose to walk to Gate A-24 of her volition. The facts in this regard are directly at odds.

In support of their respective positions, the parties present deposition testimony from key airlines personnel and plaintiff. Defendants rely primarily on the testimony of the Comair gate agent Jessica (Kaseke) Goforth, who was assigned to work at Gate A-4 on March 29, 2007. Goforth's testimony was in part as follows. On March 29, 2009, Goforth was in charge of dispatching wheelchair assistance for plaintiff; Goforth was wearing a company-issued uniform of black pants, black shirt with red around the trim, and a black sweater. She also had on a name badge. Upon learning that plaintiff's departure gate had changed, Goforth approached plaintiff, informed her of the situation, and told her she was going to arrange for wheelchair assistance for plaintiff to the new gate. Plaintiff refused Goforth's offers for assistance, told Goforth that she preferred to walk, and immediately began walking towards the new gate. Goforth quickly called dispatch for electric cart service, which was before plaintiff's fall.

Goforth further testified that she was assigned to work Gates A-4/6 for her entire shift on March 29, 2007, from approximately 7:00 a.m. to 3:30 p.m.  Goforth first noticed plaintiff when the wheelchair attendant brought plaintiff to Gate A-4.  Goforth was standing behind the podium.  At that time, Goforth took the stub from plaintiff's ticket to remind herself that there was a passenger who needed wheelchair assistance.  Plaintiff was not brought to Gate A-4 until about one-half hour before her scheduled departure of approximately 1:30 p.m.  Plaintiff remained sitting in a wheelchair.  About 10–15 minutes after plaintiff arrived, Goforth learned that plaintiff's departure gate had changed.  She then had the discussion with plaintiff about wheelchair assistance to the new departure gate.  At no time was Goforth talking on a cell phone.  Plaintiff's injury occurred around 1:00 to 1:15 p.m.  Goforth did not see plaintiff's fall, and she did not learn of plaintiff's fall until Goforth had completed the boarding for another flight.

To the contrary, plaintiff testified in relevant part that upon her arrival at the Cincinnati-Northern Kentucky Airport at 9:59 a.m., plaintiff was provided wheelchair assistance and taken to Gate A-4 for departure.  She was left seated in the regular waiting area chairs, not a wheelchair.  Plaintiff waited at Gate A-4 for about an hour.  No other passengers were around.  A woman dressed in street clothes—slacks and a jacket, came up to the Gate area.  She was talking on the phone when she came down the walkway; the woman walked over to the desk.  She said to plaintiff, "you know, you're at the wrong gate."  Plaintiff then asked where she should be, and the woman responded that plaintiff should be at Gate 24.  Plaintiff asked how she should get to Gate 24, and the woman responded that plaintiff should follow the ramp.  Plaintiff told the woman that she could not get there because she needed a wheelchair.  Plaintiff also told the woman that her ticket stated that she was supposed to have a wheelchair, and there was no way that she could walk down to Gate 24.

5

However, the woman told plaintiff that she had a two-hour layover and there was plenty of time to walk. All the while, the woman was talking on the phone.

Plaintiff described the woman as "chubby," Caucasian, approximately five-feet tall, approximately 35-40 years old, and brunette. Plaintiff further stated that she could not see whether the woman was wearing a badge because the woman had her back to plaintiff. But plaintiff acknowledged that it made her mad that the woman was talking on the phone all this time because she thought it was rude. Plaintiff looked down the concourse to Gate 24, and it was some distance away. Plaintiff told that woman that she could not walk that distance, but she would try. She therefore determined that she would walk. (Plaintiff also stated that she is the type of person who is determined to do things on her own.) After maneuvering one moving sidewalk and proceeding to the next, plaintiff fell, fracturing her hip.[2]

In addition to the above testimony concerning the course of events immediately preceding plaintiff's fall, the parties also present additional deposition testimony and documentary evidence to support their arguments concerning the circumstances of plaintiff's fall.

Defendants argue that the deposition testimony conclusively establishes that defendants have no legal liability for plaintiff's injuries. The gist of defendants' argument is that the deposition testimony shows that plaintiff acted in response to direction from some unidentified "mystery woman," not airlines personnel, and particularly not Goforth, and plaintiff had no reason to believe that the mystery woman was an agent or employee of the airlines. Defendants further argue that

---

[2] Defendants have submitted as an exhibit a purported security video showing plaintiff's fall. The Court's Information Technology department has determined that the video is not compatible with the Court's technology and cannot be viewed. In any event, the Court does not consider the actual circumstances of plaintiff's fall integral to the Court's decision on the motions for summary judgment.

6

Goforth's testimony, as supported by deposition testimony from an airport electric cart driver, Ryan Gross, confirms that at a minimum, plaintiff decided to walk to Gate 24 of her own volition. Defendants argue that they therefore cannot be shown to have breached a duty to plaintiff and are entitled to summary judgment.

It is clear that the contradictory deposition testimony of the gate agent, Goforth, and that of plaintiff, cannot be reconciled. For example, Goforth testified that she was wearing a Comair Airlines "uniform," whereas plaintiff testified that the woman who spoke to plaintiff was not wearing a uniform. There are significant time differences that do not comport with plaintiff's known arrival times. However, contrary to defendants' arguments, the discrepancies in the testimony do not mandate summary judgment in favor of defendants. Under the summary judgment standard, the Court must consider the evidence and all reasonable inferences in favor of the nonmoving party. *See Slusher,* 540 F.3d at 453. Applying that standard to the circumstances of this case, and giving due consideration to the respective testimony of the key deponents, a reasonable jury could determine that the discrepancies in the testimony are explainable. Accordingly, the discrepancies do not rule out the consideration that the person to whom plaintiff spoke was an airlines employee, who may have been Goforth, despite the contradictory details in the testimony.

Absent any fact to support the presence of a third-party "mystery person" at Gate A-4, it can *reasonably be inferred* that a dialogue took place between the gate agent (Goforth) and plaintiff concerning the departure gate change and wheelchair assistance, and that one or the other of the deponents is mistaken with regard to the details of the dialogue and the surrounding circumstances. This is particularly so in this case, in which plaintiff contends that the key airline witness' (Goforth) recall of the circumstances leading up to plaintiff's fall is subject to question in light of her personal

7

and employment history. It can reasonably be inferred that the gate agent may recall the facts in her own favor. By the same token, given plaintiff's age, infirmity, and need for wheelchair assistance, it is reasonable to infer that she may be mistaken concerning some details of her encounter with the gate agent, e.g., whether the black slacks and sweater Goforth was wearing was a "uniform" or "street clothes."

Accordingly, the factual discrepancies create triable issues of material fact involving credibility determinations by the factfinder. They do not mandate resort to a wholly new unsupportable conjecture of a third-party mystery person to thereby absolve defendants of any liability for plaintiff's fall. Defendants are thus not entitled to summary judgment based on their argument that airlines personnel played no role in plaintiff's attempt to walk to her new departure gate.

With regard to defendants' remaining arguments, the Court finds no grounds warranting summary judgment on the facts and law presented. Plaintiff has met her burden of showing that a genuine issue of material fact exists for trial. *See Slusher,* 540 F.3d at 453. It is undisputed that Delta Airlines issued plaintiff's flight ticket, which included provisions for wheelchair assistance during the course of her air travel. It is also undisputed that certain aspects of Delta Airline's service was handled by Comair Airlines. Plaintiff has presented evidence of contractual and/or other arrangements between defendants for air travel and related services, including policy, procedure, and passenger assistance. Plaintiff has also presented evidence of Delta Airline's involvement in training or oversight of Comair Airlines personnel and/or other airport ground staff. Plaintiff's evidence is sufficient to survive the motion for summary judgment as to each defendant.

There is reference in the briefs to both Michigan and Kentucky law as potentially governing this case since plaintiff is a resident of Michigan, but the situs of the accident is in Kentucky. The argument presented is insufficient to properly decide the choice-of-law issue. Likewise, given the underlying material factual dispute, and the sparsity of the legal argument, the Court finds no basis for granting summary judgment at this juncture with regard to plaintiff's breach of contract claim.

## IV.  Conclusion

The Court grants Delta Airlines, Inc.'s Motion for Leave to Join in Comair's Inc.'s Motion for Summary Judgment. The Court has considered defendants' arguments in support of summary judgment, the extensive briefing, the documentary evidence, and the parties' statements of material fact. Given the existence of material factual disputes underlying plaintiffs' claims, the Court concludes that defendants are not entitled to judgment as a matter of law. Defendants' motions for summary judgment are therefore denied.

DATED: March 31, 2009         /s/ Janet T. Neff
                              JANET T. NEFF
                              United States District Judge

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALMA CANADA-NEAL,

       Plaintiff,                                    Case No. 1:08-cv-232

v.                                                      HON. JANET T. NEFF

DELTA AIRLINES, INC. and COMAIR, INC.,

       Defendants.
_____/


**ORDER**

In accordance with the Opinion entered this date:

**IT IS HEREBY ORDERED** that Defendant Delta Airlines, Inc.'s Motion for Leave to Join in Comair's Inc.'s Motion for Summary Judgment (Dkt 102) is GRANTED.

**IT IS FURTHER ORDERED** that Defendant Delta Airlines, Inc.'s Motion for Summary Judgment (Dkt 9) is DENIED.

**IT IS FURTHER ORDERED** that Defendant Comair, Inc.'s Motion for Summary Judgment (Dkt 109) is DENIED.


DATED: March 31, 2009                          /s/ Janet T. Neff
                                                              JANET T. NEFF
                                                               United States District Judge